## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**GINA L. DAVIS,**

      **Plaintiff,**

**vs.**                                             **Case No.  1:16cv30-MP/CAS**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the Social**
**Security Administration,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Acting Commissioner

(Commissioner) of the Social Security Administration (SSA) denying

Plaintiff's consolidated applications for Supplemental Security Income (SSI)

filed pursuant to Title XVI of the Act.  After consideration of the entire

record, it is recommended that the decision of the Commissioner be

affirmed.

## I. Procedural History

On May 12, 2010, Plaintiff, Gina L. Davis, filed an application for SSI alleging disability beginning July 2, 2009.  Tr. 24.  (Citations to the transcript/administrative record, ECF Nos. 8-9, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.)

Plaintiff's application was denied initially on July 28, 2010, and upon reconsideration on January 14, 2011.  Tr. 24, 78-81.  On March 8, 2011, Plaintiff requested a hearing.  Tr. 24, 91-92.  On February 13, 2012, Administrative Law Judge (ALJ) Kelley Fitzgerald held a video hearing with Plaintiff appearing in Gainesville, Florida, and the ALJ in Jacksonville, Florida.  Tr. 24, 40-67, 919-52.  Plaintiff was represented by Elizabeth F. Stakenborg, an attorney.  Tr. 24, 89-90, 919.  Plaintiff testified during the hearing.  Tr. 923-47.  Robert N. Strader, an impartial vocational expert, testified during the hearing.  Tr. 947-51.

On May 17, 2012, the ALJ issued a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled since May 12, 2010, the date the application was filed.  Tr. 32.  The ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work with exceptions.  Tr. 28.  The ALJ found Plaintiff was not disabled at step four of the sequential evaluation process because she retained the

RFC to perform her past relevant work.  Tr. 31.  On June 14, 2012, Plaintiff

requested review from the Appeals Council.  Tr. 17-20, 266-68 (letter/brief).

On August 24, 2013, the Appeals Council considered additional submitted

evidence and denied Plaintiff's request for review of the ALJ's decision

making the ALJ's decision the final decision of the Commissioner.  Tr. 1-7;

*see* 20 C.F.R. § 404.981.

On October 9, 2013, Plaintiff filed a Complaint with this Court seeking

review of the ALJ's decision.  *See* Case No. 1:13cv196-GRJ, ECF No. 1.

The parties filed memoranda of law, ECF Nos. 17-18, which were

considered.  Plaintiff raised three issues on appeal.  Tr. 957.  On March 11,

2015, United States Magistrate Judge Gary R. Jones entered an Order

reversing and remanding the matter pursuant to the sentence four of 42

U.S.C. § 405(g).  ECF No. 19 in that case.  On May 26, 2015, the Appeals

Council remanded the case to ALJ Fitzgerald with directions.  Tr. 970-73.

The Appeals Council noted, in part: "The claimant filed a subsequent claim

for Title XVI benefits on November 25, 2013.  The Appeals Council's action

with respect to the current claim renders the subsequent claim duplicate.

The [ALJ] will consolidate the claim files, create a single electronic file, and

issue a new decision on the consolidated claims."  Tr. 972 (citations

omitted).

On August 10, 2015, ALJ Fitzgerald held a video hearing and

presided over the hearing from Jacksonville, Florida, and Plaintiff appeared

in Gainesville, Florida.  Tr. 870; *see* Tr. 894-917.  Ted D. Mitchell, an

impartial vocational expert, testified at the hearing.  Plaintiff was again

represented by Elizabeth F. Stakenborg, an attorney.  *Id.*  In her decision,

the ALJ provided a brief procedural history:

> Pursuant to the District Court remand order, the Appeals Council has directed that the subsequent Title XVI claim dated November 25, 2013, be consolidated with the prior application and that a new decision based on consolidated claims be issued (Exhibit 5A/3). Additionally, the remand noted that the new treating source opinion evidence submitted at the Appeals Council level must be considered and that an alternative finding to establish not disability at Step 5 of the sequential evaluation should be made (Exhibit 4A/5).
>
> The claimant is alleging disability since July 2, 2009.

Tr. 870.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since May 12, 2010, the application date."  Tr. 872.

2. "The claimant has the following severe impairments: obesity; disorders of the spine; a history of a concussion (2009); gastrointestinal disorder; and an affective disorder."  *Id.*

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 873.

4. "[T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except with no more than occasional climbing ramps/stairs; occasional balancing, stooping, kneeling, crouching, crawling; no climbing of ladders/ropes/scaffolds; no concentrated exposure to hazards (machinery, heights, etc.); no more than simple, routine, repetitive tasks."  Tr. 876.

5. "The claimant has no past relevant work."  Tr. 881.

6. "Considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Tr. 881.  The ALJ noted that "[t]he regulations provide that the ability to perform light work, includes the ability to perform sedentary work."  Tr. 882.  The vocational expert testified that given noted "limitations but at the sedentary level of exertion as defined in the regulations, the individual [Plaintiff] would be able to perform the requirements of representative occupations" such as an addresser, a surveillance system monitor, and a call out operator, all at the sedentary exertion level, unskilled, with an SVP of two.[1]  *Id.*

7. "The claimant has not been under a disability, as defined in the Social Security Act, since May 12, 2010, the date the application was filed."  *Id.*

---

[1]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 416.968(a).  A Specific Vocational Preparation (SVP) of two means "[a]nything beyond short demonstration up to and including 1 month."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of one and two.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); <u>accord</u> <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).  The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  <u>Moore</u>, 405 F.3d at 1211.[2]

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 416.920(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 416.945(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 416.946(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v), (e) & (g).

An ALJ may make this determination either by applying the grids or by

obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-

40; see 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner

carries this burden, the claimant must prove that he or she cannot perform

the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

## IV.  The Evidence

Plaintiff provided a statement of facts in her memorandum.  ECF No.

15 at 8-24.  This statement is derived in large part from the statement of

facts set forth in Plaintiff's memorandum filed in Case No. 1:13cv196-GRJ,

ECF No. 17 at 2-11 in that case.  The statement of facts in that case also

included information that had been provided to the Appeals Council, *id.* at

11-12.  In her current memorandum, Plaintiff adds facts from two non-

treating, non-examining State agency psychologists.  ECF No. 15 at 24.

On remand and in her October 20, 2015, decision, Tr. 870-83, the

ALJ considered many patient records and other information not considered

in her prior decision of May 17, 2012, Tr. 24-32.  For the most part, these

additional records and other information are not mentioned in Plaintiff's

memorandum.  *Compare* ECF No. 15 at 8-24 *with* Tr. 873-81.

Plaintiff does not take issue with the ALJ's recitation of the facts

particularly those included within her step three analysis and RFC

assessment.  Tr. 873-81.  Although somewhat lengthy, the salient portions

of the ALJ's RFC findings are reproduced below.

> During the recent due process hearing, the claimant testified that she
> has not worked since her last hearing in February 2012 and had not
> looked for work since that date.  She reported that she lived alone.
> Since her last hearing, she testified that her headaches had improved
> and that she has not had any new medical conditions develop since
> the last hearing.  She later testified that her brain surgeries and
> shunt have improved her headaches, but noted that they still
> continue.
>
> She noted that she was not able to climb stairs without pain.  She
> reported pain in her knees, back, and hips due to arthritis.  She
> stated that she also had problems bending over as required for
> housekeeping, adding that bending caused "head pain."   She
> stated that she could only lift up to 10 pounds and then had pain in
> her arms; stand for up to 40 minutes before her legs get tired and
> ache; walk "maybe" 30 minutes and then has pain in her legs; and

sit 40 to 60 minutes, after which she has pain and numbness in the lower hip.  She reported that although she had a valid driver's license, she has not driven lately due to pain in her neck, adding that she uses the bus to get to her doctors' appointments or to the store which she estimated was 3 or 4 times a month.

The claimant stated that her activities of daily living included going to the store to pick up small items; being visited by her daughter daily during which her daughter cleans her home and does her laundry as well as go grocery shopping for the claimant.  She reported that she attends church on Sundays and uses the church van for transportation.  The claimant also reported that she watches television and listens to gospel music.

The claimant also testified that she had not been arrested nor had she used illegal drugs since the last hearing.  It is noted that during the prior hearing, the claimant testified that she had not used illegal drugs since the alleged onset date, however, the medical evidence of record showed that she in fact used marijuana (Exhibit 5F/8, 39) and cocaine (Exhibit 19F/86).

I also note that new evidence re-confirms that the claimant has not been completely forthcoming with respect to illegal drug use. Records dated April 2015 show that although she reported that she did not use illegal drugs (Exhibit 51F/7), evidence just one month later in May 2015 showed that she tested positive for marijuana and cocaine (Exhibit 52F/4).  Additionally, the claimant collected unemployment compensation through at least 2010, and testified at the prior hearing that she was applying for jobs via computer.

Regarding the claimant's physical impairments, as noted in the prior decision, the claimant stated that on the alleged onset date, she was hit on the head at Dairy Queen and went to the emergency room on 3 of the 4 subsequent days, yet was never admitted and was discharged with diagnoses of neck pain, concussion, and headache (Exhibits 2F/40; 19F/56).  She underwent a CT scan of the head in August 2009 which was negative (Exhibits 29F/2-5, 51F/14).  An MRI of the cervical spine also taken in August 2009 revealed multilevel cervical spondylosis at the right C4-C5 and moderate right neural foraminal narrowing (Exhibits 21F/6-7, 1F/14).

Vocational rehabilitation records from December 2009 show that the claimant requested schooling, medical assistance, and possible job training (Exhibit 1F/16).  I note that such requests are inconsistent with her allegation of total disability and an inability to work.

Progress notes from March 2012 show multiple pain complaints, however, her physical examination was normal (Exhibit 46F/38) and it is noted that a later ultrasound in April 2012 failed to show any abnormality to explain her abdominal pain (Exhibit 46F/49).  Records show that the claimant continued to have gastroesophageal reflux disease symptoms but had run out of Protonix (Exhibit 46F/26-28).

In November 2012, the claimant was seen for left toe pain and an x-ray revealed a subacute fracture of her small toe (Exhibit 46F/47).

In January 2013, she sought treatment for a leg rash and was told to discontinue scented products and bleach baths (Exhibit 46F/21-22). She followed up for abdominal pain in February 2013 and was ordered to abstain from alcohol (Exhibit 46F/18-19).  It is noted that in April 2013, she complained of all over body pain but only abdominal pain was diagnosed (Exhibit 46F/15-16).  Epigastric pain was again reported in June 2013 and was ordered to be compliant with Protonix to treat an H. pylori infection (Exhibit 46F/13-14).  In October 2013, she reported that her abdominal pain improved but had returned and it was noted that she was only taking the Protonix if she had abdominal pain (Exhibit 46F/10-11).   On that date, she was ordered to restart Protonix daily (Exhibit 46F/11).  In November 2013, the claimant reported that her abdominal pain had resolved (Exhibit 46F/7-8).  In December 2013, she reported that she was compliant with Protonix and that she only had slight stomach pain with certain foods and alcohol (Exhibit 46F/5).  Her cellulitis was noted to be resolved (Exhibit 46F/6).

In February 2014, the claimant presented to the ER for back and shoulder pain following a fall (Exhibit 37F/12).  In March 2014 she presented for follow-up for her fall.  Studies including a CT scan of the head and abdomen and x-rays of her right shoulder, hip, and ankle only revealed degenerative changes of the cervical spine but was negative for any traumatic injury (Exhibit 35F/1).  RTC tendinitis

was diagnosed (Exhibit 34F/6).  On that date, she was given a referral for physical therapy for her right shoulder but the physical examination showed that she ambulated independently without an antalgic gait and had full strength of 5/5 in both upper extremities (Exhibit 34F/8-11).  On April 4, 2014, it was noted that the claimant had cancelled her physical therapy and was discharged for not following up for a four week period (Exhibit 34F/2).  The claimant's non-compliance with physical therapy suggests that the claimant's symptoms were not as serious as she reported and detracts from her credibility as a whole.

The claimant had a normal gynecological examination in June 2014 (Exhibit 35F/5-8).

In July 2014, the claimant again presented to the ER for an acute exacerbation of neck pain.  It was noted that she was ambulatory with a steady gait (Exhibit 37F/28-34).

The claimant was hospitalized twice in October 2014.  The first hospitalization was secondary to a congenital anomaly of cerebrovascular system and she underwent a transcatheter onyx embolization of the right occipital mixed pial-dural arteriovenous fistula; a right craniotomy for resection of dural-av fistula; and a right craniotomy for AVF resection (Exhibit 39F/2-5, 19-23).  The second hospitalization was for hydrocephalus (Exhibit 39F/40-44) and she underwent VP shunt surgery (Exhibit 39F/67-68).  Following the surgery, records from treating physician, Elvira Silveria Mercado, M.D., in November 2014 revealed that the claimant reported that her vision was progressively getting better since the first surgery and that overall, she was doing much better, getting stronger, no longer was using a walker, and no longer needed physical therapy (Exhibit 42F/6).  She did report weakness and headaches, however, she reported that she was not nervous or anxious (Exhibit 42F/6).

In December 2014, the claimant underwent a new evaluation at Shands Endocrinology for hyperprolactinemia which was diagnosed a few months prior after complaints of menstrual abnormalities. During the evaluation, she reported that her menses were now regular and it was noted that she ambulated without difficulty (Exhibit 51F/1-5).

Records from Brian Hoh, M.D., in January 2015, revealed that workup following being struck by a door at Dairy Queen revealed a right occipital pial-dural AV fistula but that she was very grateful and happy with the results from her surgery (Exhibit 43F/2) [Tr. 1642]. She noted that she did not even feel like she had surgery and had no complaints or symptoms.  The claimant also denied any neurological deficits (Exhibit 43F/3) [Tr. 1643].  Follow up by Dr. Hoh in April 2015 revealed complaints of occasional short-term memory lapses but that she was living at home and was able to take care of herself she reported that she was doing well overall. Physical examination revealed that her gait was normal as was her strength and sensation (Exhibit 43F/1) [Tr. 1641].

An April 2015 follow-up on hyperprolactinemia, revealed complaints of only mild headaches.  Her examination showed normal strength, tone, muscle mass, full range of motion without tenderness or joint swelling (Exhibit 51F/5-9).

ER records dated April 26, 2015, revealed that the claimant was involved in a motor vehicle accident where she hit her head on the window and reported neck pain (Exhibit 50F/9).  X-rays of her lumbar spine only revealed degenerative disc disease and facet osteoarthritis and a CT of the head and spine showed no traumatic injury (Exhibit 50F/12).   Follow-up revealed that she endorsed only some neck soreness but denied any other problems.  She was instructed that she could take off her neck brace (Exhibit 50F/16).

Records from Dr. Mercado from April 2015 revealed follow-up of the claimant's epigastric right upper quadrant pain and it was noted that chronic cholecystitis might be the cause.  Tramadol and pherngan [sic] as needed were prescribed.   It was noted that her neurological examination was negative as were any complaint of visual disturbance.   They also discussed a low-fat diet and she was told to follow up if her symptoms worsened (Exhibit 52F/6-7).

In May 2015, Dr. Mercado noted that the claimant tested positive for both marijuana and cocaine and reported daily marijuana use (Exhibit 52F/4).  During that visit, it was noted that her mood and affect were normal (Exhibit 52F/5).

A physical examination in July 2015 revealed normal strength and muscle tone, full range of motion in both upper and lower extremities (Exhibit 51F/13) [Tr. 1922].   There were no visual deficits upon examination the physician speculated that the claimant's reported headaches were the result of an incorrect eye prescription as the claimant admitted that she had not picked up new glasses (Exhibit 51F/15) [Tr. 1924].

As for the opinion evidence, I give no weight to the extremely restrictive residual functional capacity assessment furnished by Dr. E. Schabert of Reliant Family Practice, dated September 2011 (Exhibit 14F) [Tr. 662].[4] Dr. Schabert set forth diagnoses of cervical disc disease, tension headache.  This opinion is not corroborated by any abnormal tests documented in treatment records, and the reported limitations far exceed what would reasonably be expected to emanate from the claimant's medically determinable impairments. Furthermore, if the claimant were this limited then I would expect that other medical sources would have noted similar limitations.   A consultative examiner, Lance Chodosh, M.D., had evaluated the claimant in December 2010 and noted that the examination of the extremities showed no edema, cyanosis, clubbing, deformity, or varicosity, and pulses were patent.  There was no deformity, tenderness, or spasm of the back/spine, and neurological examination was within normal limits.  Gait was normal.  Based upon his examination, he found no limitations at all, but only complaints of pain without physical signs of impairment (Exhibit 12F) [Tr. 644-52]. Likewise, at the claimant's most recent physical examination her musculoskeletal examination was normal, with no mention of any exertional limitations (Exhibit 52F) [Tr. 1929-33-May 7, 2015].

---

[4]  In the argument portion of her memorandum, Plaintiff argues that the ALJ's RFC assessment is erroneous because it conflicts with Dr. Schabert's September 2011 opinion regarding her limitations.  ECF No. 15 at 25-33.  The ALJ considered Dr. Schabert's diagnoses and his restrictions in her prior decision.  Tr. 30-31.  Plaintiff argues the ALJ erred in rejecting Dr. Schabert's assessment and raised a similar issue in Case No. 1:13cv196-GRJ, ECF No. 17 at 1 and 18-22, but the issue was not resolved by Magistrate Judge Jones in light of his ruling on the other two issues presented. Tr. 957.

I note that the initial determination regarding the physical impairments was offered by a state agency single decision maker which is not an acceptable medical source and has no special knowledge of the claimant or her condition and therefore cannot be considered herein (Exhibit 9A/4) [Tr. 991].  I do give some weight to the opinion of the State Agency Medical Consultant who opined that the claimant could perform the full range of medium exertion (Exhibit 7A/7) [Tr. 975-86] but in order to resolve doubts in the claimant's favor, I am assigning greater weight to the earlier report in January 2011 which found that the claimant was only capable of light exertion (Exhibit 13F) [Tr. 654-61].

I have considered the correspondence from the claimant's friend, Wanda Rivers dated July 24, 2012.  Therein, she noted that the claimant spent a lot of time at her house and was always in pain at night when she sleeps and that her health had taken a turn for the worst (Exhibit 24E).  I note that friends are not medically trained to make exacting observations, and therefore the accuracy of this statement is questionable.  Most importantly, significant weight cannot be given to witnesses statements indicating the claimant is disabled because they are simply not consistent with the preponderance of the evidence in this case.

Given the overall medical evidence of record, specifically her medication and physical therapy non-compliance as well as contradictory statements regarding her drug use, I find that the claimant's allegations are not fully credible (Exhibits 34F/2; 44F/7-8; 46F/13-14, 26-28; 51F/7, 52F/4).  Accordingly, I have concluded that her allegations of pain and other symptomatology are disproportionate to the objective medical findings and are not credible beyond limiting the claimant as stated in the residual functional capacity assessment.  In reaching this decision, I considered the report from the Department of Vocational Rehabilitation (Exhibit 24F), but I did not assign any significant weight to the conclusions as they are based on the claimant's self-described limitation and self-described inability to work.

Tr. 877-81.[5]  *See* Tr. 873-76 (step three assessment).

## V. Legal Analysis

### Substantial evidence supports the ALJ's consideration of Dr. Schabert's opinion, Plaintiff's RFC and her credibility.

### I.

Plaintiff argues that the ALJ failed to properly weigh the opinion

evidence from one of Plaintiff's treating physicians, Dr. Schabert.  ECF No.

15 at 26, 29; *see supra* at 15 n.4.

As the finder of fact, the ALJ is charged with the duty to evaluate all

of the medical opinions of the record and resolve conflicts that might

appear.  20 C.F.R. § 416.927.  When considering medical opinions, the

following factors apply for determining the weight to give to any medical

opinion: (1) the frequency of examination and the length, nature, extent of

the treatment relationship; (2) the evidence in support of the opinion, such

as "[t]he more a medical source presents relevant evidence to support an

opinion, particularly medical signs and laboratory findings, the more weight"

that opinion is given; (3) the opinion's consistency with the record as a

---

[5]  These findings are derived from Exhibits 1A-11A, 1B- 31B, 1D-6D, 1E-37E, and 1F-52F.  Tr. 884-93.  ALJ Fitzgerald's prior decision was based on consideration of Exhibits 1A-3A, 1B-15B, 1D-2D, 1E-23E, and 1F-20F.  Tr. 33-37.  Exhibits 24E and 25E and 21F and 22F were provided to the Appeals Council after ALJ Fitzgerald's prior decision entered on May 17, 2012.  Tr. 5.

whole; (4) whether the opinion is from a specialist and, if it is, it will be

accorded greater weight; and (5) other relevant but unspecified factors.

20 C.F.R. § 416.927(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultative

examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Further, opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues

reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 416.927(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6.  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.  *See supra* at 8 n.3.

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.

It is apparent that Plaintiff argues that Dr. Schabert opined that Plaintiff was unable to work and necessarily disabled.  Such a conclusion of disability would not be entitled to any special weight or deference, however. The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability.

20 C.F.R. § 416.927(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6.  In

Lewis v Callahan, the court noted "that we are concerned here with the

doctors' evaluations of [the claimant's] condition and the medical

consequences thereof, not their opinion of the legal consequences of his

condition.  Our focus is on the objective medical findings made by each

doctor and their analysis based on those medical findings."  125 F.3d at

1440.

The ALJ considered Dr. Schabert's opinion and gave no weight "to

the extremely restrictive [RFC] assessment furnished by" him.  Tr. 662,

880; *see supra* at 15 n.4.  The ALJ explained:

> Dr. Schabert set forth diagnoses of cervical disc disease, tension
> headache.  This opinion is not corroborated by any abnormal tests
> documented in treatment records, and the reported limitations far
> exceed what would reasonably be expected to emanate from the
> claimant's medically determinable impairments.  Furthermore, if the
> claimant were this limited then I would expect that other medical
> sources would have noted similar limitations.  A consultative
> examiner, Lance Chodosh, M.D., had evaluated the claimant in
> December 2010 and noted that the examination of the extremities
> showed no edema, cyanosis, clubbing, deformity, or varicosity, and
> pulses were patent.  There was no deformity, tenderness, or spasm
> of the back/spine, and neurological examination was within normal
> limits.  Gait was normal.  Based upon his examination, he found no
> limitations at all, but only complaints of pain without physical signs of
> impairment (Exhibit 12F).  Likewise, at the claimant's most recent
> physical examination her musculoskeletal examination was normal,
> with no mention of any exertional limitations (Exhibit 52F).

Tr. 880.  Other than referring to Dr. Schabert's conclusions regarding

Plaintiff's limitations, ECF No.15 at 26-29, Plaintiff did not explain why his

opinion is consistent with the medical record as a whole.[6]  *See* 20 C.F.R.

§ 416.927(c)(4) ("Generally, the more consistent an opinion is with the

record as a whole, the more weight [the ALJ] will give to that opinion.").  For

example, the ALJ observed that contrary to Dr. Schabert's opinion,

Dr. Chodosh evaluated Plaintiff in December 2010 and noted that the

examination of the extremities showed no edema, cyanosis, clubbing,

deformity or varicosity, and pulses were adequate.  Tr. 645-46, 880.  Other

inconsistencies are noted, including the ALJ's review of Plaintiff's most

recent physical examination with no mention of any exertional limitations.

Tr. 880, 1929-30.  When seen on May 7, 2015, Plaintiff complained of

---

[6]  Plaintiff had reported being hit on the head at Dairy Queen in July 2009 (in and around her alleged disability onset date of July 2, 2009) and went to the emergency room on three of the four subsequent days.  Tr. 878; *see* Tr. 506 for a description of the accident at Dairy Queen.  She was treated for a head injury.  Tr. 311-19, 329-32.  She was not admitted and was discharged with diagnoses of neck pain, concussion, and headache.  *Id.*  It appears that Erik Schabert, D.O., of Family Practice Associates, P.A., first saw Plaintiff on June 22, 2009, for headaches.  Tr. 507.  She was diagnosed with headaches, gastritis, osteoarthritis, visual disturbance, and carpal tunnel syndrome.  *Id.*  Plaintiff then saw Dr. Schabert on July 10, 2009, for neck pain.  Tr. 506.  Plaintiff saw Dr. Schabert thereafter regularly through April 18, 2011.  Tr. 490-505, 754-90.  Dr. Schabert, at Reliant Family Practice, continued to treat Plaintiff from September 2001 through November 2011.  Tr. 733-48.  On September 30, 2011, Dr. Schabert completed his one-page medical source statement, noting an "extremely restrictive [RFC] assessment," Tr. 880.  Tr. 662.  The medical bases for these restrictions, relating back to July 10, 2009, were cervical disc disease, tension headache, and low back pain.  *Id.*

abdominal pain and headaches, although she had no headaches for the past two weeks.  Tr. 1929.  Plaintiff appeared well-developed and well-nourished and she was in no distress.  Tr. 1929.  Plaintiff's neck was supple and there was no thyromegaly present.  Tr. 1930.  Plaintiff's cardiovascular exam showed normal rate, regular rhythm, normal heart sounds, and intact distal pulses.  *Id.*  The exam of Plaintiff's heart showed no gallop and no friction rub and no murmur heard.  *Id.*  Plaintiff's pulmonary/chest exam showed that normal effort and breath sounds were normal.  Plaintiff had no respiratory distress, no wheezes, and no rails.  *Id.*  She exhibited no chest tenderness.  Plaintiff's abdominal exam showed that bowel sounds were normal and she exhibited no distention or mass.  There was abdominal tenderness, but Plaintiff showed no rebound and no guarding.  *Id.*

Other inconsistencies with Dr. Schabert's opinion included a normal musculoskeletal exam with Plaintiff exhibiting no edema or tenderness.  *Id.*  Also, contrary to Dr. Schabert's opinion, the review of systems portion of the May 2015 examination indicated that Plaintiff was positive for arthralgia, but she was negative for myalgias, back pain, and joint swelling.  Tr. 1929.  From a psychiatric perspective, Plaintiff had a normal mood and affect; her behavior and thought content were normal.  Tr. 1930.  As the ALJ noted,

this benign physical examination, in which Plaintiff did not allege a back

pain, undermined Dr. Schabert's opinion of disabling physical limitations.

Tr. 662, 880, 1921-30.  In fact, as noted above, a review of systems

indicated negative for back pain.  Tr. 1929.

Notwithstanding, the ALJ also stated that she gave "some weight" to

the opinion of a State Agency Medical Consultant who opined that Plaintiff

could perform the full range of medium exertion.  Tr. 880.  The ALJ

determined that in order to resolve doubts in Plaintiff's favor, she assigned

greater weight to the earlier report in January 2011, which found that

Plaintiff was only capable of light exertion.  Tr. 655-61, 880.  Although not

given the same controlling weight or deference as the opinion of treating

physicians, the findings of a state agency medical consultant regarding the

nature and severity of a claimant's impairments must be treated as expert

opinion at the ALJ and Appeals Council levels of administrative review.

*See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996).  The findings of

State agency medical consultant provide additional evidence to support the

ALJ's findings.  *See* Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

It is the task of the ALJ to examine the evidence resolve conflicting

reports.  *See* Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996).  Here,

the ALJ reviewed the relevant medical evidence of record and resolved the

conflict between Dr. Schabert's opinion and the other medical evidence. Tr. 880. (This is the second time the ALJ considered Dr. Schabert's opinion. Tr. 30-31. This time, however, the ALJ also considered older medical records as she did before and more recent medical records that were not cited in Plaintiff's memorandum, ECF No. 15 at 8-24. Tr. 877-81.) The ALJ properly rejected Dr. Schabert's opinion because it was contrary to the medical records, which did not lend support to his extreme limitations. *See, e.g.*, Tr. 644-47, 655-61, 662, 880, 981-82, 1929-30. Substantial evidence supports the ALJ's consideration of Dr. Schabert's opinion.

## II.

Plaintiff offers a secondary argument that the ALJ erred in not properly evaluating Plaintiff's credibility about her subjective complaints. ECF No. 15 at 29.

The credibility of the claimant's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988). After considering a claimant's complaints of pain, an ALJ may reject them as not credible. *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)). If an

ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility.  *See* Wilson v. Barnhart, 284 F.3d 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id.*

Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that she is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 416.928(a), 416.929(a).

Pain is subjectively experienced by the claimant, but that does not mean that only a mental health professional may express an opinion as to the effects of pain.  One begins with the familiar way that subjective complaints of pain are evaluated:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Wilson, 284 F.3d at 1225.  *See* 20 C.F.R §§ 416.929 (explaining how symptoms and pain are evaluated); 416.945(e) (regarding RFC, total limiting effects).[7]

In assessing Plaintiff's credibility, the ALJ considered Plaintiff's activities of daily living at step three, Tr. 875, and as part of her RFC assessment.[8]  Tr. 877.

The ALJ determined that Plaintiff's allegations were not fully credible in light of the overall medical evidence of record and specifically Plaintiff's medication and physical therapy non-compliance, as well as contradictory statements regarding her drug use.  *See, e.g.*, Tr. 881, 1461, 1661-62, 1817-18, 1830, 1929.  For example, on April 4, 2014, Plaintiff canceled her physical therapy, Tr. 1461, and she was discharged from physical therapy on June 2, 2014, because she had not contacted the rehabilitation center since April 4, 2014.  Tr. 1460.  She had told her doctor in October 2012 that the physical therapy (once) seemed to help with her back problems.

---

[7]  Although the ALJ did not expressly refer to the three-part part standard, it is clear that the ALJ's findings, discussion, and citation to 20 C.F.R. § 416.929, Tr. 877, indicate that the pain standard was applied.  Wilson, 284 F.3d at 1226.

[8]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 416.929(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).

Tr. 1830.  On July 23, 2012, Plaintiff's mental health provider counseled her about the importance of taking the medication every day as prescribed and not to stop taking the medication without discussing it with her doctor. Tr. 1662. Plaintiff's objective assessment was normal on that occasion, other than Plaintiff's report of perceptual disturbances.  *Id.*  When seen on June 24, 2013, Plaintiff reported that she had not been taking her antibiotics as indicated, which had been prescribed for H. pylori causing epigastric pain.  Tr. 1817.  When seen on May 7, 2015, Plaintiff reported that her pain was better on Tramadol, but reportedly, she was not taking any non-steroidal anti-inflammatory drugs.  Tr. 1929.  Plaintiff was reported to have had positive results for cocaine and marijuana and she reported daily marijuana use.  *Id.*

The ALJ also noted that Plaintiff's allegations of pain and other symptomatology was disproportionate to the objective medical findings. Tr. 880-81; *see e.g.*, Tr. 645-47, 1929-30.

In accordance with the Eleventh Circuit standard, the ALJ stated explicit and adequate reasons for her determination of Plaintiff's credibility. Substantial evidence supports the ALJ's credibility determinations.  Tr. 881; *see* Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) ("A clearly articulated credibility finding with substantial supporting evidence in the

record will not be disturbed by a reviewing court."). Plaintiff's argument on this point should be rejected.

## VI. Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on August 30, 2016.

s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Written objections to these proposed findings and recommendations must be filed within 14 days after being served with a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> A copy of the objections shall be served upon all other parties. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. A party may respond to another party's objections within 14 days after being served with a copy thereof.**